UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-21514-WILLIAMS/REID

DS HEALTHCARE GROUP, INC., *et al.*,

    Plaintiffs,

v.

FORTUNE INTERNATIONAL COMPANY LLC,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
MOTION FOR FINAL DEFUALT JUDGMENT AGAINST
DEFENDANT FORTUNE INTERNATIONAL COMPANY LLC**

This cause is before the Court on Plaintiff DS Healthcare Group, Inc.'s and Metidago Holdings LLC's ("Plaintiffs") Motion for Final Default Judgment as to Defendant Fortune International Company LLC (the "Motion"). [ECF No. 65]. The Motion was referred to the Undersigned by the Honorable Kathleen M. Williams for a report and recommendation. [ECF No. 67]. For the reasons addressed below it is **RECOMMENDED** that the Motion be **GRANTED**.

**BACKGROUND**

This is a trademark infringement action. Plaintiff Meditago owns various trademarks issued by the United States Patent and Trademark Office for haircare, skincare, and cosmetic products. [ECF No. 65 at 2]. Plaintiff DS Healthcare sells and distributes those products under an exclusive license from Meditago throughout the world. [*Id.*]. Plaintiffs alleges Fortune International Company LLC ("Defendant" or "Fortune") and other defendants sold Plaintiffs' products that had been manufactured and packaged to be sold in the European market, to buyers in the United States via Defendant's online e-commerce store and through Amazon resellers. [ECF No. 42 at 7]; *see*

1

*also* [ECF No. 65 at ¶ 7]. Specifically, Plaintiffs contends that "Defendant … target[ed] their business activities towards consumers within this district through the operation of its Internet based e-commerce website, www.fortuneinternationalco.com, wherein the Defendant sells wholesale products intended for downstream re-sellers." [ECF No. 42 at 6].

Plaintiffs state that its "[p]roducts that are destined for export to Europe contain ingredients that are different from those that are (or legally can be) sold to American consumers based upon regulatory restrictions." [ECF No. 65 at ¶ 9]. And, Plaintiffs verified this allegation by having its "representative … conduct[] test sample purchases to determine whether the products are indeed infringing." [ECF No. 42 at 6–7].

Plaintiffs' Complaint contains four counts: (1) federal trademark infringement; (2) common law unfair competition; and (3) common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a). *See* [ECF No. 42 1–2]. On December 14, 2022, Plaintiffs properly served Defendant with the summons, civil cover sheet, and the Complaint, in accordance with Federal Rule of Civil Procedure 4.[1] Defendant has not filed any response to the Complaint, and at this Court's instruction the Clerk entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). [ECF No. 63].

Plaintiffs now move for entry of default judgment against Defendant and for a permanent injunction to "immediately stop selling, offering for sale, or promoting the Plaintiff's products." [ECF No. 65]. Plaintiffs also request actual damages in the cost of $11,592.00 pursuant to 15 U.S.C. § 1117(a). [ECF No. 65 at]. In support of its request, Plaintiffs have provided invoices and sworn statements from its representatives and attorney. *See* [ECF Nos. 65-1; 65-2].

---

[1] The Return of Service states that the process server directly served Defendant by delivering it copies of the civil cover sheet, summons, and Complaint. [ECF No. 65-2]. This is proper service. *See* Fed. R. Civ. P. 4(e)(2)(A).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment against a defendant who has failed to defend the lawsuit. *See* Fed. R. Civ. P. 55(b)(2); *Creeled, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, Case No. 23-CV-60088-RAR, 2023 WL 2987654, *1 (S.D. Fla. 2023).

"A defendant's default alone does not in itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Eleventh Circuit has explained that there is a sufficient basis in the pleadings when the complaint could survive a motion to dismiss for failure to state a claim. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). When a defendant defaults, they are deemed to have admitted the plaintiff's well-pleaded factual allegations. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

## **DISCUSSION**

Here, the well-pleaded facts in the Complaint are sufficient to state a plausible claim for relief for trademark infringement.

### A. Trademark Infringement

The Lanham Act, 15 U.S.C § 1114, states that "[a]ny person who shall, without the consent of the registrant … use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant for the remedies hereinafter provided." *See* 15 U.S.C. 1114(1)(a).

To succeed on a trademark infringement claim, "a plaintiff must show that the defendant used the mark in commerce without its consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake.'" *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300–01 (11th Cir. 2001) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998)). This burden has come to mean that "the determination boils down to the existence *vel non* of 'likelihood of confusion.'" *Id.* at 1301 (quoting *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986)).

Federal courts have adopted the "first sale doctrine" which provides that "once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." *Quality King Distribs. v. L'Anza Resch. Int'l*, 523 U.S. 135, 152 (1998). The first sale doctrine, however, does not protect against materially different products as these products are "not genuine and therefore its unauthorized sale constitutes trademark infringement." *See Davidoff*, 263 F.3d at 1302; *see also Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ("In other words, the unauthorized importation and sale of materially different merchandise violates Lanham Act section 32 because a difference in products bearing the same name confuses consumers and impinges on the local trademark holder's goodwill.").

"A material difference is one that consumers consider relevant to a decision about whether to purchase a product." *Davidoff*, 263 F.3d at 1302. "Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products." *Id.*; *see, e.g. Lever Bros. Co. v. United States*, 877 F.2d 101, 107 (D.C. Cir. 1989) (finding that although there were only minor differences between competing versions of deodorant soap ingredients and packaging, it was nonetheless found to be material);

*PepsiCo Inc. v. Nostalgia*, 18 U.S.P.Q.2d 1404, 1405, 1991 WL 113161 (N.D. Ill. 1990) (noting there were material differences "in labeling, packaging and marketing methods [and] are likely to cause confusion and dissatisfaction among retailers and consumers to the detriment of [the plaintiff] and its authorized domestic bottlers.").

The Court has carefully reviewed the Complaint and supporting documentation and concludes Plaintiffs have established a *prima facie* claim for copyright infringement in violation of 15 U.S.C § 1114. Plaintiffs demonstrates that it had a product sold exclusively to European customers, and that Defendant rebranded, tweaked the formula, and sold the product to United States consumers on its website and through Amazon. [ECF No. 42 ¶ 16].

Plaintiffs have also showed "material differences" since "[t]he sale of Plaintiff's products that are destined for European markets and consumers adversely effects Plaintiff's goodwill, creates a likelihood of confusion…" *See* [ECF No. 65 at 10]. Here, these "material differences" include "different labels, in different languages, setting out different information and legally required indicators. Further, [i]nternational [p]roducts contain ingredient labels that differ from United States Products based upon regulatory and consumer considerations." [*Id.* at 4] Finally, Plaintiffs' "International Products are packaged for retail sales rather than online sales." [ECF No. 42 at ¶ 49]. This would confuse United States consumers because "the European products that are being sold to United States consumers by the Defendant have different active ingredients, combinations, lab tests and results, packaging and labels, which Plaintiff's customers expect when they buy [Defendant's] products." [ECF No. 42 at ¶ 51].

As such, Defendant's unauthorized sales of Plaintiffs' products to a different consumer base and changes to Plaintiffs' packaging and formula, are sufficient to establish trademark

5

infringement. As such, Defendant is liable for $11,592.00 for damages pursuant to 15 U.S.C. § 1117(a).[2]

### B. Common Law Unfair Competition

The second claim Plaintiffs raises is unfair competition by Defendant. [ECF No. 65 at 1]. Generally, "the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975); *see also FIU Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (finding that "FIU correctly acknowledges that its Florida trademark infringement claim … and its common law infringement and unfair competition claim … rise or fall with its federal trademark infringement and unfair competition claims").

The Eleventh Circuit in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983) established "[t]he appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida." *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381-CIV-PAINE, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986).

The Eleventh Circuit stated that "[t]he factors relevant to determining whether there is a likelihood of confusion between the trade dress of two products are 'essentially the same' as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks." *John H. Harland Co.*, 711 F.2d at 981 (quoting *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 192 (5th Cir. 1981)).

---

[2] 15 U.S.C § 1117(a) states in relevant part that "the plaintiff shall be entitled, subject to the provisions of sections … and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction." *See* 15 U.S.C. § 1117(a).

When searching for a likelihood of confusion, this court may use factors such as "the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion." *Id.* at 972 (citing *Exxon Corp. v. Texas Motor Exchange, Inc.,* 628 F.2d 500, 504 (5th Cir.1980)). *See also Creeled, Inc. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 23-CV-60088-RAR, 2023 WL 2987654, at *4 (S.D. Fla. Apr. 17, 2023) (noting that "[w]hether a defendant's use of a Plaintiff's trademarks created a likelihood of confusion between the Plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law").

Here, Plaintiffs have established common law unfair competition against Defendant by showing a likelihood of confusion between the products. According to Plaintiffs, Defendant has continued to promote, advertise, sell, and distribute "goods bearing one or more of Plaintiffs' Marks that constitute trademark infringement based on the fact that the products are materially different than those offered and sold by Plaintiffs in the United States." [ECF No. 1 at 14]. The sale of Plaintiffs' infringed goods going through various marketplaces can only lead to the customer feeling confused through the different "origin[s] and quality[ies] of Defendants' products." [*Id.*]. Therefore, Plaintiffs have established common law unfair competition.

### C. Common Law Trademark Infringement

Plaintiffs also bring a claim against Defendant for common law trademark infringement. *See* [ECF No. 1 at 14]. "The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act." *Creeled, Inc. v.*

*Individuals, Partnerships*, 2023 WL 2987654, at *4 (citing *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004)). As the Undersigned has stated above, Plaintiffs have established a *prima facie* claim for copyright infringement in violation of 15 U.S.C § 1114. Since this District has made clear that Florida common law trademark infringement mirrors that of the Lanham Act, Plaintiff has demonstrated a violation of common law trademark infringement as well. *See PetMed Express*, 336 F. Supp. 2d at 1217–18.

D. **Permanent Injunction**

The final matter before the Court is Plaintiffs' request for a preliminary injunction against Defendant. The Court may grant the injunction if a party can show:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (quoting *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam)).

"The standard for a permanent injunction is the same as for a preliminary injunction except that the movant must show 'actual success on the merits' instead of a 'likelihood of success.'" *Cardinale v. Vitamin Emporium, Inc.*, No. 6:21-CV-379-ACC-DAB, 2022 WL 3099071, at *4 (M.D. Fla. July 1, 2022), *report and recommendation adopted*, No. 6:21-CV-379-ACC-DAB, 2022 WL 3544316 (M.D. Fla. Aug. 18, 2022) (quoting *Klay*, 376 F.3d at 1097).

The Lanham Act also permits the court to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).

Put differently, if the plaintiff can show success on the merits of its claims, "and if the equities involved favor injunctive relief," then the plaintiff is entitled to injunctive relief. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004) (citing *Neva, Inc. v. Christian Duplications Int'l, Inc.,* 743 F. Supp. 1533, 1548 (M.D. Fla. 1990)). Even if a defendant discontinues ongoing trademark violations, the court can still issue a permanent injunction to further prevent a defendant from infringing on a plaintiff's product. *Id.* (citing *Nutrivida*, Inc., 46 F. Supp. 2d at 1319). *See also Pepsico, Inc. v. California Sec. Cans,* 238 F. Supp. 2d 1172, 1178 (C.D. Cal. 2002) ("though it appears unlikely…that [d]efendant's allegedly wrongful conduct continued after [p]laintiffs initiated this action or will continue in the future, in the absence of opposition from the non-appearing defendant, it cannot be said that it is absolutely clear that Defendant's allegedly wrongful behavior has ceased and will not begin again.").

Here, Plaintiffs have established good cause for a permanent injunction. First, Plaintiffs have demonstrated a likelihood of success on the merits, as demonstrated by the thorough explanation of the resale of its European-bound products in the United States. Second, Plaintiffs will continue to suffer irreparable injury because, absent an injunction, Defendant may continue its unauthorized sales of Plaintiffs' products in the United States, and thereby cause damage to Plaintiffs' reputation and goodwill with customers. Third, any damage the proposed injunction may cause the Defendant is outweighed by the threatened injury to Plaintiffs because this injunction would merely stop Defendant from further infringing on Plaintiff Meditago's trademarks through impermissible resale of Plaintiffs' European specific products. *See Klay*, 376 F.3d at 1097. Lastly, public policy favors enjoining a party from committing trademark

infringement. *Id.* For these reasons, Plaintiffs' request for a permanent injunction against Defendant should be granted.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Plaintiffs' Motion for Final Default Judgment [ECF No. 9] be **GRANTED**, and that Plaintiffs recover from Defendant Fortune International Company LLC as follows:

a. $11,592.00 in damages for Defendant's trademark infringement.

b. A permanent injunction against Defendant and all others acting in concert with Defendant, to immediately stop selling, offering for sale, or promoting the Plaintiffs' products on Fortuneinternationalco.com or any other online e-commerce website and prohibit Defendant from any further use or sale of the Plaintiffs' products.

It is further **RECOMMENDED** that Plaintiffs be permitted to file a separate motion to recover their reasonable attorneys' fees and costs.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 10th day of May, 2023.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc: **U.S. District Judge Kathleen M. Williams**; and

**All Counsel of Record**